UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00130-GNS

ROSS SCHAMBON                                                                                          PLAINTIFF

v.

ORKIN, LLC                                                                                              DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendant's Motion to Compel Arbitration (DN 12), which is ripe for adjudication. The motion is **GRANTED** to the extent outlined below.

### I.      BACKGROUND

Defendant Orkin, LLC ("Orkin") hired Plaintiff Ross Schambon ("Schambon") in February 2014 to work as a part-time employee in its Bowling Green branch. (Miller Decl. ¶ 3, DN 14-2). In September 2014, Schambon was promoted to a full-time position. (Miller Decl. ¶ 4). As part of his promotion he was required to sign Orkin's Agreement to Arbitrate ("Agreement"), in which he agreed to abide by Orkin's Dispute Resolution Policy ("DRP") and arbitrate any dispute regarding or arising out of his employment. (Agreement to Arbitrate, DN 12-1). The Agreement provides, in relevant part:

> [I]n consideration of employment and the mutual promises, covenants, and conditions set forth in this Agreement, I agree, as does the Company, to abide by the Company's Dispute Resolution Policy ("DRP") and to arbitrate any dispute, claim, or controversy regarding or arising out of my employment (as defined by the Company's DRP, a copy of which I may request at any time) that may arise between me and the Company, its parent, subsidiaries, affiliates, or any other persons or entities acting as its agent. The parties agree that the Company's

>operations directly affect interstate commerce to the extent that all procedures hereunder contemplated shall be subject to, and governed by, the Federal Arbitration Act (FAA). Unless the parties agree otherwise, the arbitration shall be administered under the applicable rules of the American Arbitration Association ("AAA"). The parties agree that the arbitrator shall follow the substantive law, including the terms and conditions of this Agreement.
>
>I specifically understand that by agreeing to arbitrate, I waive any right to trial by judge or jury in favor of having such disputes resolved by binding arbitration. I understand that any disputes presented to an arbitrator shall be resolved only in accordance with the applicable federal, state, or local law governing such dispute. The award rendered by the arbitrator shall be final and binding, and judgment may be entered on the award in any court having jurisdiction thereof. I agree that any arbitration proceeding under this Agreement will not be consolidated or joined with any action or legal proceeding under any other agreement or involving any other employees, and will not proceed as a class action, collective action, private attorney general action or similar representative action.

(Agreement to Arbitrate 1).

When Orkin hired Schambon in February 2014, it gave him a Field Employee Handbook, which described the DRP in general terms:

>The Dispute Resolution Policy establishes the procedures both you and the Company are required to follow for resolving any "dispute" between us. The policy applies to and legally binds the Company, together with you and the Company's current and/or former employees and applicants.
>
>The Company believes that protracted and expensive court litigation often does not serve the best interests of either you or the Company. The Company therefore has instituted a Policy that is designed to be fair, efficient, and inexpensive. All parties are required to use this process exclusively, rather than more formal court litigation, so that the merits of such disputes are more promptly and efficiently resolved.
>
>This policy has been designed with the intent of assuring a reliable and efficient method for addressing such disputes. These procedures reflect the Company's long-standing commitment to open communication and its continuing interest in seeing that employment-related disputes are promptly, fully and fairly addressed.
>
>To acknowledge and agree to the Dispute Resolution Policy, the Agreement to Arbitrate form must be signed by employee either at the time of hire, during the signing of bonus plans or at the time of job promotion. The Agreement to Arbitrate from can be found the myOrkin intranet site.

(Field Employee Handbook 1, DN 13-4).

The DRP itself is quite detailed and requires employees to adhere to certain procedures when they have a "dispute." (Dispute Resolution Policy 3-4, DN 13-1). First, employees must file a "Request for Dispute Resolution," describing the nature of the dispute, the relevant facts, and remedies sought. (Dispute Resolution Policy 4-5). The request must be filed with Orkin within the applicable contractual limitations period; if there is no such period, the request must be filed within the statute of limitations provided by either statute or common law. (Dispute Resolution Policy 4). Any dispute the request fails to name or describe is forever waived. (Dispute Resolution Policy 4). Fourteen days after a Request for Dispute Resolution is filed, Orkin's Human Resources Department is to contact the employee filing the request and attempt to resolve the dispute through informal means.[1] (Dispute Resolution Policy 5). If the employee and Orkin are unable to resolve the dispute informally, and the employee wants to pursue it further, he or she must file a Demand for Arbitration form within 90 days after he or she filed the Request for Dispute Resolution and pay a filing fee of $120.00. (Dispute Resolution Policy 6, 10). Once the employee properly files a Demand for Arbitration, Orkin and the employee select an arbitrator. (Dispute Resolution Policy 7). Once an arbitrator is selected, a six-month discovery period begins, and the arbitration hearing is to be held within ninety days from the close of discovery. (Dispute Resolution Policy 8-9).

Orkin fired Schambon in August 2015. (Wallace Decl. ¶ 5, DN 14-1). Despite the Agreement, he filed this action alleging violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335. (Compl. ¶¶ 16-22, DN 1). Schambon's attorney initially believed that USERRA claims were not arbitrable, but he

---

[1] Only employees can participate in the informal dispute resolution process; attorney participation is prohibited. (Dispute Resolution Policy 5).

3

eventually emailed Orkin, indicating: "after speaking with my client, he will agree to an order staying this proceeding and referring it to arbitration if Orkin agrees in said order to pay the full cost of arbitration . . . ." (Goetz-Anderson Decl. Ex. A, DN 14-3). Orkin agreed, and its attorney prepared a joint motion to stay and compel arbitration which it sent to Schambon's counsel for review. (Goetz-Anderson Decl. Exs. B-C, DN 14-3). Schambon, while recognizing "[Orkin's] legal right to stay this case and compel [him] to arbitrate," declined to join the motion. (Goetz-Anderson Decl. Ex C). As a result, Orkin restyled the joint motion as an unopposed motion to stay and compel arbitration. (Goetz-Anderson Decl. Ex. D, DN 14-3). Orkin sent a draft to Schambon's attorney, who gave Orkin permission to file the motion as unopposed but noted, "this should not be interpreted as an admission or agreement with the contents of the motion." (Goetz-Anderson Decl. Ex. D). After Orkin filed its motion Schambon's attorney emailed Orkin requesting a copy of the DRP, which it sent the next day. (Goetz-Anderson Decl. Ex. E, DN 14-3). Subsequently, Schambon filed a response in opposition to Orkin's motion arguing that the Agreement is unenforceable because he did not knowingly and voluntarily waive his right to trial by jury. (Pl.'s Resp. Def.'s Unopposed Mot. Stay Action & Compel Arbitration 1, DN 13 [hereinafter Pl.'s Resp.]). The motion has been fully briefed and is ripe for decision.

## II. DISCUSSION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a written agreement to arbitrate involving a dispute arising of a contract that affects interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). "The FAA expresses a strong public policy favoring arbitration of a wide class of disputes." *Cooper v. MRM, Inc.*, 367 F.3d 493, 498 (6th Cir. 2004). Consequently, "arbitration

4

agreements must be read liberally to effect their purpose[,]" and any doubts regarding arbitrability are to be resolved in favor of arbitration. *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 745 (W.D. Mich. 2008) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89-91 (2000); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). Further, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed . . . absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds*, *Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

According to the Sixth Circuit, a court has four tasks when ruling on a motion to compel arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (citation omitted). In this case, the third and fourth tasks are undisputed. The Agreement covers Schambon's USERRA claim, which is arbitrable. *See Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 563 (6th Cir. 2008). Furthermore, Schambon stated in his sur-reply that, if the Court grants Orkin's motion, he does not object to the Court dismissing this action without prejudice, as opposed to staying it pending arbitration. (Pl.'s Sur-Reply Def.'s Unopposed Mot. Stay Action & Compel Arbitration 2, DN 18).

Schambon argues that the Agreement is unenforceable because he did not knowingly and voluntarily waive his right to a jury trial. The Sixth Circuit applies "ordinary contract principles in determining whether a binding arbitration agreement that include[s] a waiver of a right to sue

5

in court [is] valid." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 973-74 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)). In determining whether a waiver was executed knowingly and voluntarily, the Court considers: "(1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Morrison*, 317 F.3d at 668 (internal quotation marks omitted) (quoting *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)).

In his response, Schambon admits that he is "not uneducated," but claims that his lack of a legal background indicates his waiver was not knowing and voluntary. (Pl.'s Resp. 6). This argument is unpersuasive. Schambon has not cited a single case suggesting that a person needs a legal background in order to execute a knowing and voluntary wavier. Courts have upheld waivers when the plaintiff had only a high school education. *Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 518 (6th Cir. 2008) (affirming the district court's decision that the plaintiff, who had only a high school education and was not a native English speaker, executed a knowing and voluntary waiver); *Dunn v. Gordon Food Servs., Inc.*, 780 F. Supp. 2d 570, 577 (W.D. Ky. 2011). Therefore, Schambon's experience, background, and education weigh in favor of finding that he executed a knowing and voluntary wavier.

Schambon argues that the Agreement is unenforceable because he was given a brief amount of time to sign "several dense, legalistic documents that he did not understand, and he was never offered the opportunity to consult an attorney." (Pl.'s Resp. 6). In *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476 (6th Cir. 2014), the plaintiff argued that her waiver was not

knowingly and voluntarily executed because she was presented several documents at one time, directed to sign them without further explanation of what the documents were, and not given the opportunity to have the waiver reviewed by an attorney. *Id.* at 482. Rejecting these arguments, the court explained, "[i]n the absence of any evidence that [the plaintiff] requested more time to review the Waiver, indicated she did not understand the Waiver, or asked for time to have an attorney review the waiver, this factor weighs in favor of [the plaintiff] having knowingly and voluntarily executed the Waiver." *Id.* at 483; *see also Sako*, 278 F. App'x at 518-19 (holding that a waiver was voluntary even when the plaintiff only had a few minutes to decide whether to sign); *Moore*, 533 F. Supp. 2d at 749 (finding a knowing and voluntary waiver where the plaintiff did not ask for more time to complete the application or to consult an attorney, or indicate in any fashion that he did not understand the terms).

In this case, Schambon has not alleged that he requested additional time to review the Agreement, asked questions about it, or indicated that he did not understand it. (*See* Schambon Aff., DN 13-2). Furthermore, he has not alleged that he requested time to consult with an attorney. (*See* Schambon Aff.). Indeed, both Wanda Wallace ("Wallace") and Shellie Miller ("Miller"), the Orkin employees who Schambon says had him sign the Agreement, have declared that their typical practice is to give employees the Agreement, allow them time to review it, and then ask if they have any questions. (Schambon Aff. ¶¶ 3-4; Wallace Decl. ¶ 6; Miller Decl. ¶ 6). If requested, Wallace and Miller give employees additional time to review the Agreement and allow employees to consult with an attorney before signing it. (Wallace Decl. ¶ 7; Miller Decl. ¶ 7). Neither recalls Schambon asking questions or indicating that he did not understand the Agreement. (Wallace Decl. ¶ 8; Miller Decl. ¶ 8). As a result, the amount of time Schambon

7

had to consider whether to sign the waiver and his opportunity to consult with a lawyer weighs in favor of finding that he executed a knowing and voluntary waiver.

Similarly, the Court finds unpersuasive Schambon's argument that his waiver was not knowing and voluntary because, at the time he signed the Agreement, he did not know what arbitration was and did not understand the implications of waiving his right to a jury trial. Quoting the United States Supreme Court, Kentucky's highest court has stated:

> It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*United Talking Mach. Co. v. Metcalf*, 191 S.W. 881, 883 (Ky. 1915) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)).

It is undisputed that Schambon signed the Agreement. On the page Schambon signed, he and Orkin agreed "to arbitrate any dispute, claim, or controversy regarding or arising out of" his employment. (Agreement to Arbitrate 1). Additionally, the Agreement states, "I specifically understand that by agreeing to arbitrate, I waive any right to trial by judge or jury in favor of having such disputes resolved by binding arbitration." (Agreement to Arbitrate 1). The DRP defined some terms in the Agreement, such as "dispute"; by its terms, however, the Agreement requires Schambon to arbitrate any "claim" or "controversy regarding or arising out of" his employment. (Dispute Resolution Policy 3; Agreement to Arbitrate 1). Because Schambon's USERRA claim clearly arises out of his employment with Orkin, he must arbitrate it.

However, Schambon's argument that his waiver was not enforceable because no one at Orkin gave him a copy of the DRP before he signed the Agreement (which the Court construes as addressing the scope of the Agreement) carries some force. In *Alonso v. Huron Valley*

*Ambulance Inc.*, 375 F. App'x 487 (6th Cir. 2010), the employer included a provision in its employment application requiring applicants to agree to resolve all employment-related claims through an internal "Grievance Review Board." *Id.* at 488. The provision provided no information about the board or the procedures that would be used in place of a judicial proceeding. *Id.* at 493. Specifically, the waiver provided:

> Any dispute arising out of or in connection with any aspect of my employment by the Company, or termination thereof, including by way of example but not limitation, disputes concerning alleged civil rights violations, breach of contract or tort, shall be exclusively subject to review by the Grievance Review Board. Any decision of the Review Board shall be binding to both parties, and enforceable in the circuit court.

*Id.* The plaintiffs were not given any information regarding the Grievance Review Board until approximately one month after they were hired, at which point they received a general overview of the process. *Id.* Despite the fact that the plaintiffs were educated, gave no indication that they did not understand the waivers, and successfully used the grievance process on multiple occasions, because the plaintiffs were not informed of the Grievance Review Board procedures until a month after they began working and were never informed of their right to revoke their waiver, the Sixth Circuit found that they had not knowingly and voluntarily waived their right to a judicial forum. *Id.* at 493-94.

In the present case, Schambon has stated that he "was never presented with a copy of [Orkin's DRP]." (Schambon Aff. ¶ 7). Orkin does not refute this and, instead, attempts to distinguish *Alonso*. (Def.'s Reply Supp. Mot. Stay Action & Compel Arbitration 10, DN 14 [hereinafter Def.'s Reply]). Orkin explains that this case is different because "[u]nlike the *Alonso* plaintiffs . . . [Schambon] had the ability to review the DRP before, at the time, and after he signed the Agreement." (Def.'s Reply 10). According to Orkin, *Alonso* merely stands for the proposition that employees must have "access" to the procedures taking place of a judicial forum

9

before their waiver of that forum can be considered knowing and voluntary. (Def.'s Reply 10). The Court disagrees with Orkin's interpretation of *Alonso*. The Sixth Circuit's decision indicates that an employee must be *informed* of the alternative procedures at the time he waives his right to a judicial forum. *Alonso*, 375 F. App'x at 494; *see also Williams v. Serra Chevrolet Auto., LLC*, No. 12-11756, 2013 U.S. Dist. LEXIS 7083, at *8-9 (E.D. Mich. Jan. 17, 2013) ("Just as in *Alonso*, Plaintiff cannot be said to have knowingly and voluntarily waived her right to a judicial forum when she was never informed of Defendant's arbitration rules or process at any time during her employment.").

Schambon was not informed of the contents of the DRP at the time he signed the Agreement, or any other time during his employment. The Agreement itself merely states that, by signing, an employee agrees to follow the DRP and that the employee can request a copy of the DRP at any time. (Agreement to Arbitrate 1). Orkin correctly points out that Schambon was given a Field Employee Handbook two years before he signed the Agreement, the DRP is available in full on Orkin's myOrkin intranet site, and each Orkin branch including the Bowling Green branch where Schambon worked has a kiosk at which employees can access myOrkin. The Field Employee Handbook, however, does little more than describe the DRP's general purpose. It does not contain the policy's detailed procedures, summarize them, or state that the full DRP is available online—only that the Agreement to Arbitrate form (**not** the DRP) can be found on myOrkin. The portion of the handbook that describes the DRP is merely the first page of the DRP following the index. (*Compare* Field Employee Handbook, *with* Dispute Resolution Policy 2). Moreover, the fact that the DRP was on the myOrkin site is of little importance when there is nothing in the Handbook pointing to the website and there is no indication that Schambon otherwise knew it was there. Because Schambon was not informed of the contents of

10

Orkin's DRP at the time he signed the Agreement, or any other time, he cannot be said to have knowingly and voluntarily waived his right to a judicial forum in favor of Orkin's DRP process. *See Alonso*, 375 F. App'x at 494; *Williams*, 2013 U.S. Dist. LEXIS 7083, at *2, 8.

The Agreement provides, "if any provision, or portion thereof, of this Agreement is found to be invalid or unenforceable, it shall not affect the validity or enforceability of any other part of this Agreement." (Agreement to Arbitrate 1). In light of *Alonso*, the Court believes that requiring Schambon to adhere to the DRP would render the Agreement unenforceable. Striking the DRP provision, however, the remainder of the Agreement remains intact per the savings clause quoted above. Indeed, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules . . . ." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

The DRP laid out the procedures governing arbitration between Orkin and its employees, including how the parties would select an arbitrator. Since that process is not binding here, the question becomes how arbitration will proceed in the absence of the DRP. Generally, questions regarding "what *kind of arbitration proceeding* the parties agreed to" is "for the arbitrator, not the courts, to decide." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). In this case, the Agreement provides that "[u]nless the parties agree otherwise, the arbitration shall be administered under the applicable rules of the American Arbitration Association ("AAA")." (Agreement to Arbitrate 1). Thus, without the DRP, this provision becomes operative.

One could argue that because Schambon did not have a copy of the AAA rules at the time he signed the Agreement, allowing those rules to govern would raise the same issue as the DRP

under *Alonso*.[2] Ultimately, given the strong federal policy in favor of arbitration, the Court does not believe the holding of *Alonso* would extend as far as to invalidate all arbitration agreements that rely on the AAA rules just because the employer does not provide a copy of those rules to the employee up front.[3] In fact, the employee in *Cooper* agreed to arbitrate according to the "prevailing rules of the American Arbitration Association[,]" and the employer never provided her with a copy of the AAA's rules. *Cooper*, 367 F.3d at 497. Nonetheless, the Sixth Circuit found that the employee executed a knowing voluntary waiver of her right to a judicial forum. *Id.* at 508. Under the present circumstances, Schambon is required to arbitrate under the AAA rules per the terms of the Agreement.

A final consideration is whether the Court should dismiss or stay this action pending arbitration. According to Orkin, it initially requested that the Court stay this action only in exchange for Schambon's agreement not to oppose its motion to compel. Now, it argues that dismissal is appropriate because Schambon's only claim must be resolved through binding arbitration. Furthermore, Schambon has explained that if Orkin's motion is granted he does not object to dismissal of this action without prejudice. This Court and others within the Western

---

[2] Even if the fact that Schambon did not have the AAA rules at the time he signed the Agreement raised an issue, the Agreement would be enforceable despite lacking specific procedures governing arbitration. *See, e.g.*, *McNeil v. Haley S., Inc.*, No. 3:10cv192, 2010 U.S. Dist. LEXIS 95658, at *20 (E.D. Va. Sept. 13, 2010) (finding agreement to arbitrate enforceable and valid despite the fact that it did not establish a specific set of applicable rules and procedures) (citing *Randolph*, 531 U.S. at 89-92). Furthermore, the FAA allows courts, upon the motion of either party, to appoint an arbitrator when the agreement fails to include a method of selecting arbitrators. 9 U.S.C. § 5.

[3] The alternative dispute resolution procedures used by the employer in *Alonso* were unique. The Grievance Review Board process was purely internal, culminating in the employee's presentation of his claim in a meeting before a panel of managers and employees jointly selected by the claimant and the employer. *Alonso*, F. App'x at 489. The panel then issued a final decision based on majority vote, either granting or denying the employee's claim. *Id.* There was no formal hearing before a third-party arbitrator. *See id.* Furthermore, while it cited several arbitration decisions, the *Alonso* court never even mentioned the FAA. *See generally id.* at 492-93.

District have held that an action in which all claims are referred to arbitration may be dismissed. *See, e.g.*, *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 728-29 (W.D. Ky. 2014); *Mullins v. U.S. Bancorp Invs., Inc.*, No. 1:15-CV-00126-GNS, 2016 U.S. Dist. LEXIS 47488, at *11-12 (W.D. Ky. Apr. 7, 2016); *W. IP Commc'ns, Inc. v. Universal Fid., L.P.*, No. 3:14CV-357-JHM, 2014 U.S. Dist. LEXIS 125534 (W.D. Ky. Sept. 9, 2014). Because the Court concludes that Schambon's sole claim must be arbitrated, this action will be dismissed.

### III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (DN 12) is **GRANTED** to the extent outlined above. The parties have a valid agreement to arbitrate pursuant to the rules of the American Arbitration Association. This action is **DISMISSED**, and it shall be **STRICKEN** from the Court's active docket.

**Greg N. Stivers, Judge**
**United States District Court**

April 4, 2017

cc: counsel of record